# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 20-1667V

| | |
|---|---|
| CAROL KEMPKES,<br><br>               Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>               Respondent. | Chief Special Master Corcoran<br><br>Filed: January 31, 2024<br><br>Special Processing Unit (SPU); Findings of Fact; Statutory Six Month Requirement Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Zachary James Hermsen*, Whitfield & Eddy Law, Des Moines, IA, for Petitioner.

*Madylan Louise Yarc*, U.S. Department of Justice, Washington, DC, for Respondent.

**FINDINGS OF FACT AND RULING ON ENTITLEMENT**[1]

On November 24, 2020, Carol Kempkes filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). ECF No. 1. Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA") from an influenza ("flu") vaccine she received on February 5, 2018. Petition at ¶1, 11. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, I find that Petitioner more likely than not suffered the residual effects of her alleged vaccine-related injury for more than six months, and

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

that she has satisfied the other requirements of a Table SIRVA claim. Therefore, Petitioner is entitled to compensation under the Vaccine Act.

## I. Relevant Procedural History

On April 4, 2022, about 18 months after the case was initiated, Respondent filed a Motion to Dismiss and Rule 4(c) Report ("Mot.") in which he argues that although Petitioner has provided preponderant evidence that she suffered a SIRVA injury, she has not provided sufficient evidence that the residual effects of that injury lasted for at least six months. ECF No. 33. Petitioner filed a response ("Resp.") on May 11, 2022. ECF No. 35.

After reviewing the record, on March 14, 2023, I ordered Petitioner to file additional evidence regarding the severity requirement. ECF No. 38. Petitioner filed additional materials on April 26, 2023. ECF No. 39. Respondent indicated that he would continue to defend this case notwithstanding the additional filings by Petitioner. ECF No. 40.

The matter is now ripe for adjudication.

## II. Factual History

Petitioner received a flu vaccine on February 5, 2018 at a Walgreen's Pharmacy in Des Moines, IA.[3] Ex. 16 at 1-2. She had no prior history of pain or dysfunction in her left shoulder.

On March 2, 2018 (25 days after vaccination), Petitioner sought treatment from an orthopedist. Ex. 2 at 31. She reported left shoulder pain since her flu shot on February 5, 2018. *Id*. On exam, she had weakness with pain, tenderness, and positive impingement testing. *Id*. at 32. X-rays revealed degenerative changes in the AC joint and mild sclerotic changes in the greater tuberosity. *Id*. Petitioner was diagnosed with subacromial bursitis with rotator cuff tendonitis, and was administered a cortisone injection. *Id*.

On March 30, 2018, Petitioner saw her primary care provider ("PCP") for cold symptoms. Ex. 10 at 140. Petitioner reported left arm pain after her flu shot for which she was seeing an orthopedist. *Id*. Petitioner understood that her "flu vaccine was administered in the sac around the bursae leading to inflammation and pain." *Id*. She reported that she was given steroids and "informed that the soreness will resolve gradually." *Id*. She reported that her pain was better for a week, but then started to return. *Id.*

---

[3] The vaccine administration record does not indicate into which arm the vaccine was administered. Ex. 16 at 1. However, as Respondent notes, all of Petitioner's post-vaccination treatment was limited to her left shoulder. *See* Mot. at 2, fn. 1.

2

Nine months later (on December 29, 2018), Petitioner returned to her orthopedist for further treatment. Ex. 2 at 36. Petitioner reported that the cortisone injection had "helped for a while, but now [the pain] is returning" and was disturbing her sleep. *Id*. On exam, Petitioner had full active and passive range of motion, decreased strength, and tenderness to palpation. *Id*. at 37. She was diagnosed with left shoulder rotator cuff tendonitis and bursitis and administered a second cortisone injection. *Id*. She was advised to massage her shoulder twice a day with Voltaren gel for pain relief (as Petitioner could not take NSAIDs due to prior gastric sleeve surgery). *Id*.

Petitioner returned to her orthopedist six months later (on June 25, 2019) with continued left shoulder pain. Ex. 2 at 41. Petitioner reported having "4 separate shots" in her "subacromial space," from which she got "short term relief . . . for a month only to have her pain return."[4] *Id*. She reported continued difficulty sleeping. *Id*. On exam, Petitioner had negative impingement testing and full rotator cuff strength. *Id*. She had tenderness in her cervical spine and an x-ray revealed "intervertebral disc space narrowing at C6-7 and C7-T1." *Id*. The orthopedist assessed "persistent left shoulder pain secondary to subacromial bursitis" and ordered an MRI. *Id*.

A June 28, 2019 MRI of Petitioner's left shoulder revealed supraspinatus, infraspinatus, and long head biceps tendinopathy, and extensive labral tearing. Ex. 2 at 46. She returned to the orthopedist on July 24, 2019. *Id.* at 49. She reported continuing left shoulder pain which she believed she had aggravated while refinishing her deck. *Id.* She reported relief from previous steroid injections. *Id*. On exam, she had tenderness in the AC joint and "some moderate impingement signs." *Id*. at 50. The doctor noted that the MRI showed "severe AC degenerative changes with underlying spurs causing impingement on the cuff," as well as degenerative tearing in the labrum. *Id*. He assessed left shoulder pain which he though was "primarily AC joint arthritis and impingement." *Id*. He recommended that Petitioner consider surgery and avoid additional steroid injections. *Id*.

Petitioner returned to her orthopedist on May 13, 2020, complaining of left shoulder pain along with "a little bit of numbness and tingling in the ulnar 2 digits of her hand." Ex. 2 at 57. She reported having "at least 3 injections" in her shoulder with temporary relief from each. *Id*. She was diagnosed with "left shoulder impingement and AC joint arthrosis" and scheduled for arthroscopic shoulder surgery. *Id*. at 57-58. Petitioner's examination also revealed some cubital tunnel symptoms for which the doctor suggested further evaluation by a hand surgeon. *Id*. at 58.

On June 17, 2020, Petitioner underwent arthroscopic subacromial decompression and distal clavicle excision. Ex. 2 at 59-60. She began physical therapy two days later. Ex. 11 at 5. At her initial evaluation, Petitioner reported that she had a flu shot in 2018

---

[4] Petitioner's records reflect only two cortisone injections by this time. *See* Ex. 2 at 32, 37.

3

"that caused a lot of pain in the shoulder" and that she "had some cortisone shots that improved it until about end of 2019 until she couldn't take it anymore." *Id*. at 6. She also reported having "carpal tunnel problems and ulnar nerve problems in the past in the left arm." *Id*. She attended 16 sessions through August 25, 2020. *Id*. at 49.

Petitioner had post-operative follow-ups with her orthopedist on June 24, 2020, and July 28, 2020, receiving a third cortisone injection on the latter date. Ex. 2 at 62, 65. At her final follow-up on September 1, 2020, Petitioner was 90% improved but still occasionally took prescription pain medication. Ex. 7 at 11. She was encouraged to "continue to push forward with her activities." *Id.* at 12. In discussing whether her left shoulder injury was caused by her flu shot, Petitioner noted that she "had had 6 months of relief" from her first cortisone injection and approximately seven months of relief from her second ("her injection in December 2018 helped through 7/24/2019"). *Id*.

*Relevant Affidavit Testimony*

Petitioner has filed several affidavits in support of her claim.[5] In her first, she states only that her "symptoms have been going on for more than six months," but without additional detail. Ex. 4 at ¶6. Petitioner's supplemental affidavit, filed April 26, 2023, specifically addresses the period between February 5, 2018 (the date of her vaccination) and December 29, 2018 (the date of her second treatment for left shoulder pain). Ex. A. Petitioner notes that her first cortisone injection on March 2, 2018, provided some relief of her shoulder pain, but then the pain gradually worsened. *Id*. at 2. She states that she believed, based on what she was told by her orthopedist, that her "pain would eventually resolve" and that she was "not told about the next step." *Id*. She described her strategy to try to "tough it out," by using cold compresses, massages, taking over-the-counter medications, and modifying her activities, including at work. *Id*. at 2-3. She recalled having to hire help to mow her yard during the summer of 2018, which she had not done previously. *Id*. at 3. Finally, she described her difficulty participating in basket weaving because of her left shoulder pain. *Id*. at 3.

Petitioner's co-worker, Lisa Martinez, submitted an affidavit on April 18, 2023. Ex. B. Petitioner met Ms. Martinez at the airport in August 2018 when she traveled to Iowa for a business meeting. *Id*. at 2. Ms. Martinez described how Petitioner was unable to help her carry her bag due to left shoulder pain. *Id*.

Petitioner's friend, Sally Reavely, was a member of a basket weaving group with Petitioner between February 5, 2018 and December 29, 2018. Ex. C at 1. She recalled

---

[5] Petitioner's second affidavit, filed December 29, 2020, and her third affidavit, filed August 26, 2021, addressed concerns about the site of Petitioner's vaccination, rather than the issue of severity. Ex. 13, 15 (ECF No. 15, 25).

Petitioner attending meetings during that time "for companionship," but having difficulty basket weaving due to her left shoulder pain. *Id*. at 1-2.

Petitioner's daughter, Stacey Kempkes, saw her mother in-person approximately once a month in 2018. Ex. D at 1. She observed Petitioner have difficulty doing household tasks and enlisted the help of her boyfriend at the time to assist her mother with lifting boxes, moving items, and carrying things up or down stairs. *Id*. at 2. In July, 2018, she assisted her mother in finding someone to mow her yard. *Id*. at 2-3.

### III.   Applicable Legal Standards

The Vaccine Act requires that a petitioner demonstrate that "residual effects or complications" of a vaccine-related injury continued for more than six months. Vaccine Act §11(c)(1)(D)(i). A petitioner cannot establish the length or ongoing nature of an injury merely through self-assertion unsubstantiated by medical records or medical opinion. §13(a)(1)(A). "[T]he fact that a petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013V, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014).

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19. And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the

patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### IV. Finding of Fact - Severity

To establish six months of residual effects, Petitioner must demonstrate that her symptoms more likely than not continued until at least August 5, 2018 (six months from the February vaccination). Petitioner sought treatment for her injury quickly – receiving a cortisone injection on March 2, 2018 (one month after vaccination) – but then did not seek further treatment until December 29, 2018, nine months later. *See* Ex. 2 at 31, 36. Respondent argues that Petitioner has not provided preponderant evidence that her injury persisted for at least six months because he "does not believe that Petitioner's cortisone injection administered on March 2, 2018 would have been effective for the duration of the extensive gap in care," and therefore, Petitioner's injury must have resolved prior to the

six month mark. Mot. at 6. Respondent further highlights the later gaps in Petitioner's treatment records as evidence that she has not satisfied the severity requirement. *Id.*

Although Petitioner did not seek treatment for a nine-month period that overlaps with the six-month severity date, there is evidence that favors her severity argument. In subsequent visits to her orthopedist, for example, Petitioner reported that her pain was relieved for some period of time after her cortisone injections, including the one administered on March 2, 2018, but that her pain then returned. *See* Ex. 2 at 36, 49, 57; Ex. 11 at 6. At her last appointment on September 1, 2020 (which pre-dates the filing of her Petitioner in this case), Petitioner reported that she "had had 6 months of relief" from her first cortisone injection, and approximately seven months from her second. Ex. 7 at 11. Petitioner's affidavit testimony corroborates her reports in the records. She explained that after her first orthopedist appointment she understood that the cortisone injection would eventually relief her pain. Ex. A at 2. She also explained that she is "not a person that goes to the doctor with every little ache or pain," a fact corroborated by the fact that she did not seek treatment for any medical condition during the period in question. *Id.* at 3. Finally, she stated that after the first cortisone injection, she tried to "tough it out," both because she though that relief would come with time and because she had concerns about repeat cortisone injections. *Id.* at 2-3.

Further, the affidavits filed by Petitioner's family, friends, and co-workers corroborate the fact that Petitioner continued to suffer left shoulder pain at least through August 2018, which alone would be sufficient to satisfy the severity requirement. Petitioner's daughter stated that she observed Petitioner's difficulty in completing household tasks during the gap in treatment in 2018. *See* Ex. D at 2. She described her boyfriend at the time assisting Petitioner in moving items around her home. *Id.* Further, Petitioner's daughter provided a text message, dated July 18, 2018, which corroborates Petitioner's statement that she had to hire someone to mow her lawn that summer due to her left shoulder pain. *See id.* at 3. In addition, Petitioner's co-worker, Lisa Martinez, traveled to a business meeting with Petitioner in Iowa in August 2018. Ex. B at 2. When Petitioner met Ms. Martinez at the airport, she was unable to assist with carrying Ms. Martinez's bag due to her left shoulder pain. *Id.*

Respondent's primary argument is that it is unlikely the first cortisone shot relieved Petitioner's pain for the entire gap in treatment in 2018, with it more likely that her SIRVA injury was so minor that it did not require further treatment. Mot. at 6. However, there is at least one record that suggests that Petitioner did enjoy a long period of relief from those injections. *See* Ex. 7 at 11. Further, Respondent's argument omits the possibility that Petitioner may have experienced some residual symptoms during the gap period, even though she did not seek additional treatment at the time. In fact, Petitioner has provided

7

reasonable explanations for why she waited to return to her orthopedist. She believed that the cortisone injection would relieve her symptoms over time and decided to try to "tough it out" to avoid repeat injections that she believed might be harmful. *See* Ex. A at 2. Petitioner's report to her PCP on March 30, 2018 that she was "informed that the soreness will resolve gradually" after the cortisone shot corroborates Petitioner's affidavit testimony. Ex. 10 at 140. Finally, there is no evidence anywhere in the record that Petitioner had fully recovered from her injury prior to August 5, 2018.

Thus, after consideration of the entire record, which includes both medical records and witness testimony, I find that Petitioner has provided preponderant evidence that the residual effects of her vaccine-related injury lasted for at least six months. Of course, the gaps throughout Petitioner's treatment course will impact the amount of damages Petitioner is awarded for her injury, but that is a separate determination from whether severity has been established.

## V.     Ruling on Entitlement

### a. Requirements for Table SIRVA

Respondent has not contested Petitioner's proof on the specific elements of a Table SIVRA. Mot. at 5, fn 6. In fact, Respondent states that "Petitioner's medical course is consistent with a shoulder injury related to vaccine administered ("SIRVA") as defined by the Vaccine Injury Table. Specifically, Petitioner's had no history of pain, inflammation, or dysfunction of her left shoulder, pain occurred within 48 hours after receipt of an intramuscular vaccination, pain was limited to the shoulder where the vaccine was administered, and no other condition or abnormality, such as brachial neuritis, has been identified to explain Petitioner's shoulder pain." *Id.*

In light of Respondent's position and the evidence of record, I find that Petitioner has provided preponderant evidence to establish that she suffered a Table SIRVA injury.

### b. Additional Requirements for Entitlement

Because Petitioner has satisfied the requirements of a Table SIRVA, she need not prove causation. Section 11(c)(1)(C). However, she must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D).

The vaccine record shows that Petitioner received an influenza vaccination on February 5, 2018 at a Walgreen's Pharmacy in Des Moines, IA. Ex. 16 at 1-2; Section

11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i) (requiring administration within the United States or its territories). Additionally, Petitioner has stated that she has not filed any civil action or received any compensation for her vaccine-related injury, and there is no evidence to the contrary. Ex. 4 at ¶7; *See* Section 11(c)(1)(E) (lack of prior civil award). And as noted above, severity has been established. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement). Therefore, Petitioner has satisfied all requirements for entitlement under the Vaccine Act.

## Conclusion

**Based on the entire record in this case, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation in this case. A separate damages order will be issued.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master